IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHRISTIAN F. NEGRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 17-1547-CFC |
| | ) | |
| CITY OF WILMINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

Christian F. Negron, Clifton, New Jersey, Pro se Plaintiff.

Laura Najemy, Esquire, City Solicitor's Office, City of Wilmington, Wilmington, Delaware.   Counsel for Defendant.

**MEMORANDUM OPINION**

March 30, 2021
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

Plaintiff Christian F. Negron, who appears *pro se*, commenced this employment discrimination action on the basis of race, national origin, and perceived disability pursuant to Title VII of the Civil Rights of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Rehabilitation Act of 1967, as amended ("Rehab Act"), 29 U.S.C. §§ 621 *et seq.*, and the Americans with Disabilities Act of 1990, as amended, ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, on October 31, 2017. (D.I. 1)  He filed an Amended Complaint on December 27, 2017. (D.I. 6)  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Before the Court is Defendant's motion for summary judgment. (D.I. 41)  The matter has been fully briefed.

I.     **BACKGROUND/FACTS**[1]

Plaintiff was a probationary firefighter in the Wilmington Fire Department's ("WFD") recruit academy, scheduled from November 17, 2014 to February 7, 2015. (D.I. 1-1 at 4)  He alleges employment discrimination by reason of race, national origin, perceived disability, and termination as a recruit on December 10, 2014. (D.I. 1, 6)  Plaintiff filed a charge of discrimination on March 11, 2015, and received a notice of suit rights dated August 21, 2017. (D.I. 1-1 at 1, 4)  The case proceeds against Defendant City of Wilmington, Delaware, all other Defendants having been dismissed. (*See* D.I. 22, D.I. 23)

Plaintiff was a recruit of the Wilmington Fire Department's 38th Recruit Academy from November 17, 2014 until his termination as a recruit on December 10, 2014. (D.I.

---

[1] The facts are construed in the light most favorable to Plaintiff, the nonmoving party.

1

43 at 15, 17, 18)   The 38th Academy class was a diverse group with ten Caucasians, seven African Americans, three Hispanics, and one "other."   (*Id.* at 24)

The WFD is a para-military organization, and Plaintiff was instructed on the importance of strict adherence to the WFD Rules and Regulations and the WFD 38th Recruit Class Conduct Policy.   (*Id.* at 24, 43)   At the beginning of the Academy Plaintiff was given a copy of the WFD Code of Conduct and the WFD Rules.   (*Id.* at 30) Plaintiff admits he was aware that:   (1) the WFD Code of Conduct provides that if a recruit is unable to report to the Academy, he must personally notify the Department by calling a designated telephone number one hour before he is due to report to work and leave a detailed message; (2) the WFD Code of Conduct provides that violations of the Code will result in disciplinary action and may result in a recommendation of termination from the Academy; (3) Article 3:43 of the WFD Rules, "Absent Without Leave," provides that any member who fails to appear for duty at the date, time, and location at which he has been assigned is absent without leave, and if a member does not contact the Fire Department prior to the start of his shift, he is considered absent without leave without notice; (4) a violation of Article 3:43 of the WFD Rules may be deemed grounds for any fire department member to be immediately relieved from duty; and (5) being absent without leave and without prior notification is a terminable offense under the WFD Code of Conduct and the WFD Rules.   (*Id.* at 3, 30-33)

According to WFD Chief Anthony S. Goode, a recruit late to the Academy violates the Code of Conduct and WFD Rules, Article 3.43.   (*Id.* at 25)   According to Goode, if a member fails to report on time for duty, he is deemed absent without leave, and failure to give notice of lateness or absence is a more serious offense than if a

2

recruit was late but provided notice in advance. (*Id.*) Also according to Goode, a violation of WFD Rules, Article 3:43, absent without leave, may be grounds for dismissal. (*Id.*)

Plaintiff twisted his left ankle on December 2, 2014 while running during physical training and was sent to urgent care. (*Id.* at 7, 32) Plaintiff's ankle injury was also evaluated by a physician at WorkPRO who released Plaintiff to light duty with no running, squatting, or jumping and advised him to follow up with the City Dispensary. (*Id.* at 8)

Plaintiff was ordered to report to duty at 6:00 a.m. on December 3, 2014, but he did not call the WFD by 5:00 a.m. to say that he would be late or absent, and he did not report for duty until approximately 7:29 a.m. (*Id.* at 32) Plaintiff states that he was told to report to the Dispensary on December 3, 2014 when it opened. (*Id.*) According to WFD Captain John Looney ("Looney"), he ordered Plaintiff and another recruit to report at 6:00 a.m. on December 3, 2014, for face piece testing. (*Id.* at 15) Looney states that no one, aside from Plaintiff, reported late for duty on December 3, 2014. (*Id.*) When Plaintiff had not arrived by 6:00 a.m., Looney called Plaintiff. (*Id.* at 16) Plaintiff did not answer this call. (*Id.*) Looney eventually made with contact and Plaintiff indicated that he thought he was to report to duty at 7:00 a.m. (*Id.*) According to Looney, Plaintiff reported to duty that day at 7:25 a.m. (*Id.*)

Also that day, Plaintiff saw Dr. Senu-Oke at the City Dispensary who released Plaintiff to modified duty for the remainder of the day to return to regular duty with no restrictions beginning December 4, 2019. (*Id.* at 9-10) Plaintiff was advised to follow up with his primary care physician. (*Id.* at 10, 32)

3

Plaintiff states that on December 3, 2014, he was called a "useless peg leg" because he limped due to the ankle injury. (*Id.* at 38) He states that on December 4, 2014, he was called "Mr. Glass" in reference to the injury and limp and on December 10, 2014 he was subject to ridicule and mocking when he was called a "peg leg" and a "gimp" due to his limp. (*Id.* at 38-39) Plaintiff also states that WFD Lieutenant Jeffrey Schaal[2] called him a "lazy Puerto Rican" on multiple occasions, forced him to sing Christmas Carols because "every Puerto Rican does that shit," and constantly harassed him due to the limp that resulted from his ankle injury. (D.I. 1-1 at 4; D.I. 43 at 38-39.) Plaintiff testified that the harassment and ridicule began after he hurt his ankle. (*Id.* at 48)

According to Schaal, part of physical training for recruits includes a running routine. (*Id.* at 13) Joshua Marcus was a recruit in the same class as Plaintiff. (*Id.* at 18) WFD Deputy Chief of Operations Michael Donohue was present from time to time for physical training for Plaintiff's class. (*Id.* at 21) Schaal, Marcus, and Donohue state that on one occasion in December, the entire Recruit class sang a Christmas song as a cadence, but Plaintiff was not singled out and made to sing Christmas carols in front of his classmates. (*Id.* at 13, 19, 22) Schaal and Looney deny using inappropriate, derogatory, or discriminatory ethnic background or injury language towards Plaintiff. Looney, Marcus, and Donohue state that they never heard anyone make comments about Plaintiff's ethnic background or heritage or other derogatory language. (*Id.* at 13, 16, 19, 22) Donohue states that when he hears

---

[2] The Charge of Discrimination misnames Schaal as Lieutenant Shaw. (*See* D.I. 1-1 at 4)

4

comments that are remotely racial, he takes appropriate disciplinary measures against the WFD member making those comments. (*Id.* at 22) According to Donohue, no one was disciplined for making racial comments during the Academy. (*Id.*)

Plaintiff was cleared by the City of Wilmington physician and his personal physician to return to full duty on December 10, 2014. (*Id.* at 14) Schaal states that because he was cleared, Plaintiff, along with other WFD recruits, was required to participate in physical training and to complete a 1.5 mile run on December 10, 2014. (*Id.* at 14, 32) On December 10, 2014, Plaintiff was asked if he was hurt or injured and Plaintiff said he was not. (*Id.* at 14, 16) Plaintiff completed the 1.5 mile run on December 10, 2014. (*Id.* at 16)

Plaintiff's termination hearing was also held on December 10, 2014 and Looney and Donohue were present. (*Id.* at 17, 22) At the hearing, Plaintiff was advised that he was being terminated due to violations of the Code of Conduct and the WFD Rules because of his absence without leave on December 3, 2014. (*Id.* at 17) According to Looney and Donohue, Plaintiff's left ankle injury was not discussed as a reason for his termination. (*Id.*) According to Goode, no recruits were terminated from the Academy for injuries sustained during the Academy. (*Id.* at 27) According to Donohue, during the hearing Plaintiff seemed apologetic for his behavior and "apologized for wasting our time." (*Id.* at 23)

Goode states that two other recruits were injured during the Academy. (*Id.* at 26) According to Goode, the other two recruits were treated the same as Plaintiff as they all were seen by the City's physician, placed on modified duty for a period of time, returned to regular duty, and expected to participate in physical training. (*Id.* at 26) A

5

third recruit was injured and cleared to return to full duty with no restrictions.   (*Id.*) That third recruit was terminated from the Academy on December 10, 2014 for violations of the WFD Rules and Code of Conduct for engaging in conduct unbecoming a firefighter, and was no longer injured at the time of his termination.   (*Id.* at 26)

Following his discharge from the Academy, Plaintiff was re-examined on February 13, 2015 at a physical therapy center, and he provided a history of a left ankle sprain while running at work and a December 10, 2014 running injury to his right knee.[3]   (*Id.* at 3)   When asked about employment, Plaintiff identified successive employment since January 1, 2015 with the North Brunswick First Aid and Rescue Squad for more than a year, the East Brunswick Rescue Squad for four years, and current part-time or per diem employment at the Monroe Township Emergency Medical Services.   (D.I. 54 at 41, 44-46)

Plaintiff denies that he was terminated because of poor or unsatisfactory performance and states that he was excluded from any benefits and subject to discrimination.   (*Id.* at 32-33)   Plaintiff considered himself physically disabled when he twisted his ankle.   (*Id.* at 48)   He contends that he was disabled or handicapped under the ADA and the Rehab Act.   (*Id.* at 33)

Defendant moves for summary judgment on the grounds that (1) Plaintiff's ADA and Rehab Act claims fail as a matter of law; (2) Plaintiff's race discrimination claim fails

---

[3] Plaintiff underwent an MRI of the right knee, dated December 23, 2014, and it indicated a stress fracture.   (D.I. 50 at 1-2)   A January 6, 2015 follow-up note assessed Plaintiff "with overuse stress fracture of the right medial compartment of the knee" and a recommendation of remaining on crutches and no weightbearing for up to four to six weeks.   (*Id.* at 1)

6

as a matter of law; and (3) the record evidence does not establish that Defendant's reason for termination was a pretext for discrimination. (D.I. 42)

Plaintiff's opposition to the motion for summary judgment consists solely of argument and is not accompanied by sworn affidavits or signed under penalty of perjury. (D.I. 49) Under Rule 56(e) "[i]f a party fails to properly support an assertion of fact . . . the court may consider the fact undisputed for purposes of the motion . . . [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) and (3); see also Byrne v. Monmouth Cty. Dep't of Health Care Facilities, 372 F. App'x 232, 233-234 (3d Cir. 2010) (unsworn certification not supported by any documentation or factual testimony is insufficient to defeat summary judgment); Williams v. Borough of West Chester, 891 F.2d at 458, 460 (3d Cir. 1989) (nonmoving party cannot simply assert factually unsupported allegations to meet burden at summary judgment).

## II.   LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be — or, alternatively, is — genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

7

declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment"; a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

### III. DISCUSSION

#### A. ADA/Rehab Act

Plaintiff alleges that Defendant regarded him as being disabled in violation of the ADA and the Rehab Act. The ADA and the Rehab Act claims are subject to the same analysis and, therefore, may be addressed at the same time. *See Weidow v. Scranton Sch. Dist.*, 460 F. App'x. 181, 184 (3d Cir. 2012) ("Because Congress has directed [that the ADA] be interpreted in a manner consistent with [the Rehabilitation Act], we will consider [Plaintiff's] claims under those statutes together.") (citation and internal quotation marks omitted) (first two alterations in original); *Chambers v. School. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (noting that because the same standards govern both Rehabilitation Act and ADA claims, the court "may address both claims in the same breath"). Defendant argues that summary judgment is appropriate on its behalf because Plaintiff is unable to establish a prima facie case of discrimination.

In enacting the ADA, Congress intended that the scope of the Act would extend not only to those who are actually disabled, but also to individuals wrongly regarded by employers as being disabled. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 139 (3d Cir. 1998). Plaintiff claims that Defendant discriminated against him because it regarded

9

him as disabled. See 42 U.S.C. § 12102(1)(C). Under this definition, Plaintiff need not actually have an impairment limiting a major life activity. 42 U.S.C. § 12102(3)(A). Rather, the focus is on the employer's "reactions [to] and perceptions [of]" its employees. Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996). "[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." Id. In addition, "[r]equiring an employee to 'submit a medical release and be cleared by [her] physician' is not evidence that an employer regards the employee as disabled." Parker v. Port Auth., 90 F. App'x 600, 604 (3d Cir. 2004) (quoting Somers v. City of Minneapolis, 245 F.3d 782, 788 (8th Cir. 2001)).

Defendant argues that Plaintiff cannot establish a prima facie case of discrimination in violation of the ADA because he cannot show that he is a qualified individual with a disability or that he was subjected to an adverse employment decision as a result of discrimination.

Plaintiff testified at his deposition that he considered himself disabled when he twisted his ankle at the fire department and that he equated his injury with disability. (D.I. 43 at 47, 48, 49) In dispute, is whether Schaal made derogatory comments about Plaintiff's ankle injury. However, even when construing the facts in the light most favorable to Plaintiff, his disability claims fail.

The Court gives Plaintiff's ADA and Rehab Act claims the broadest interpretation of disability under the ADA, yet even then the record reflects only a temporary ankle injury. "[A] temporary, non-chronic impairment of short duration is not a disability covered by the ADA." Sampson v. Methacton Sch. Dist., 88 F. Supp. 3d 422, 435

...

(E.D. Pa. 2015) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2002) (citation omitted)). Plaintiff's sprained ankle, which involved only a short time off work and then a return to full duties, is not a disability under the ADA. *Id.* at 436 (citing *e.g.*, *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274-75 (3d Cir. 2012) (finding that temporary lifting limitations that were removed four months after their inception "are the very definition of such a non-chronic impairment"); *see also Bolden v. Magee Women's Hosp. of Univ. of Pittsburgh Med. Ctr.*, 281 F. App'x 88, 90 (3d Cir. 2008) (finding proper district court's determination that no reasonable juror could have concluded the plaintiff had a disability where, after four months of an arm injury, the plaintiff was able to resume many activities and was fully able to resume all activities after seven months).

It is undisputed that Plaintiff sprained his ankle on December 3, 2014, he was released for modified duty the next day, and he returned to regular duty with no restrictions. In addition, on December 10, 2014, Plaintiff was asked if he was hurt or injured, Plaintiff said he was not, and he completed a 1.5 mile run that day. Given this admission and the fact that Plaintiff suffered a relative minor injury, no reasonable jury could find that Plaintiff was disabled as defined by the Ada or that Defendant regarded Plaintiff as disabled under the ADA or Rehab Act.[5]

Accordingly, the Court will grant Defendant's motion for summary judgment on the disability claims.[6]

---

[5] While not relevant to the issue of whether Defendant regarded Plaintiff as being disabled, Plaintiff testified to that he can care for himself, can perform manual tasks, walk, see, hear, speak, breathe, learn, and work and discovery indicates that Plaintiff has been employed on a fairly consistent basis since January 1, 2015.

[6] Even were the Court to conclude that Defendant regarded Plaintiff as being disabled, as will be discussed, Defendant's proffered reason for Plaintiff's termination as a WFD

11

## B.     Race/National Origin

Plaintiff's charge of discrimination contends that he was subjected to a hostile work environment from December 2 to December 10, 2014, and fired due to his race, ethnicity, or perceived disability (discussed above at ¶ III.A.).   Defendant moves for summary judgment on the grounds that Plaintiff has failed to meet the elements of a prima facie case of discrimination and, in the alternative, even if Plaintiff met all the required elements of a prima facie case of discrimination, Defendant had a legitimate, non-discriminatory reason to terminate Plaintiff as a recruit.

Direct evidence of discrimination is evidence "which if believed, proves . . . without inference of presumption . . . that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision . . . in deciding to terminate his or her employment."   *Salkovitz v. Pioneer Elec. (USA) Inc.,* 188 F. App'x 90, 93 (3d Cir. 2006).   This means that Plaintiff must show "a direct causal connection" between his termination and an alleged animus towards Puerto Ricans or Hispanics.   *Id.* (citations omitted).   If the employee satisfies this "rigorous" standard, the burden shifts to the employer to show that it would have made the "same decision even in the absence of the impermissible consideration."   *Id.*

"[D]irect evidence does not include stray remarks in the workplace, particularly those made by nondecision makers or statements made by decision makers unrelated to the decisional process itself."   *Deans v. Kennedy House, Inc.*, 587 F. App'x 731, 734 n.2 (3d Cir. 2014) (citing *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 96 (1st

---

recruit was not a pretext for discrimination under any theory (*i.e.*, race, national original, perceived disability) as raised by Plaintiff.

12

Cir. 1996). Instead, the plaintiff must be able to point to "'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting a discriminatory attitude.'" *Hankins v. City of Philadelphia*, 189 F.3d 353, 364-65 (3d Cir.), *reh'g en banc granted, opinion vacated*, 188 F.3d 217 (3d Cir. 1999), *order vacated in part*, 216 F.3d 1076 (3d Cir. 2000) (citations omitted).

Where a plaintiff does not present direct evidence of discrimination, courts apply the burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Kant v. Seton Hall Univ.*, 289 F. App'x 564, 567 (3d Cir. 2008). A plaintiff must first establish a prima facie case of discrimination. If a plaintiff puts forth a prima facie case, the burden shifts to the employer to provide a legitimate non-discriminatory reason for the decision. *Id.* (citing *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). Once the burden is met, the plaintiff must establish by a preponderance of the evidence that the nondiscriminatory reasons articulated by the employer are pretextual. *Id.* (citing *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). To defeat summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994). More particularly, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-

discriminatory reasons. " *Id.* at 765 (citing *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992).

To establish a prima facie case of employment discrimination due to a hostile work environment, a plaintiff must demonstrate the following five elements: (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person of the same race in his position; and (5) there is a basis for employer liability. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (citations omitted). Discrimination is severe or pervasive if it "'alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (second alteration in original) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "The hostility of a work environment must be determined by the totality of the circumstances." *Fichter v. AMG Res. Corp.*, 528 F. App'x 225, 230 (3d Cir. 2013) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993)). "Such circumstances may include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (citing *Harris*, 510 U.S. at 23). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (citations omitted).

Here, Plaintiff relies on direct evidence. In Plaintiff's charge of discrimination and answers to interrogatories, he states that Schaal called him a "lazy Puerto Rican" on multiple occasions and forced him to sing Christmas carols on one occasion because "every Puerto Rican does that shit." During his deposition Plaintiff testified that the harassment and ridicule started after he injured his ankle. Defendant produced evidence that contradicts Plaintiff's answers and charge of discrimination, but as it must, the Court construes this evidence in the light most favorable to Plaintiff, who is the non-moving party.

Plaintiff states that Schaal directed discriminatory remarks towards him on multiple occasions but does not indicate how often. Nor did Plaintiff produce evidence that Schaal was the individual who made the decision to terminate Plaintiff as a recruit. Captain Looney, Captain Porter, and Deputy Chief Donohue were present at Plaintiff's termination hearing, but there is no record evidence that Schaal was present. Plaintiff did not present any evidence that discriminatory comments were made by any person at his termination hearing by any person. Finally, there is no record evidence that racially disparaging comments were made at any time by WFD personnel who made the decision to terminate Plaintiff as a recruit. For these reasons and notably because Schaal was not the decisionmaker, the Court concludes that Schaal's comments and acts are not direct evidence that Defendant relied on Plaintiff's national origin or race as a factor in its decision to terminate Plaintiff as a WFD recruit.[7]

---

[7] WFD personnel present at the termination hearing state that Plaintiff's injury was not discussed and as not a factor in the decision to terminate him as a recruit.

15

In addition, in applying the McDonnell-Douglas burden shifting analysis, Plaintiff presented no evidence that the comments unreasonably interfered with his work performance or that the discrimination was severe and pervasive enough to change the terms and conditions of his employment.  Thus, he has not established a prima facie case of a racially discriminatory hostile work environment.

Even assuming arguendo that Plaintiff did establish a prima facie case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff as a WFD recruit.  Here, the burden is one of production rather than ultimate persuasion.  *Reeves*, 530 U.S. at 142.  Defendant terminated Plaintiff as a WFD recruit because he was late without prior notification, and he was considered absent without leave consistent with WFD Rules.  Defendant having proffered a legitimate, nondiscriminatory reason, the burden shifts to Plaintiff to establish that Defendant's proffered reason was a pretext for discrimination based on his race or national origin.  Plaintiff has failed to meet this burden.

Plaintiff produced no evidence that Defendant's proffered reason is subject to such weaknesses and implausibilities sufficient to satisfy the factfinder that Defendant's actions could not have been for nondiscriminatory reasons.  *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644-5 (3d Cir. 2015).  Nor has he pointed to evidence leading a factfinder to reasonably believe that a discriminatory reason was more likely than not a motivating or determinative factor in his termination.  *Id.* at 645.  Moreover, the undisputed record is that Plaintiff was treated the same as other WFD recruits who were injured during the Academy, seen by the City's physician, placed on modified duty for a period of time, returned to regular duty, and were expected to

participate in physical training.   One recruit who was injured was cleared to return to full duty with no restriction.   In addition, like Plaintiff, another recruit was terminated from the Academy on December 10, 2014 for violations of the WFD Rules and Code of Conduct.

In sum, the record evidence is insufficient to show that Defendant's reason for terminating Plaintiff from the Academy was a pretext for race or national origin (or disability) discrimination.   Therefore, Defendant's motion for summary judgment on this claim will be granted.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendant's motion for summary judgment.   (D.I. 41)

An appropriate order will be entered.